CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

2014 SEP 18  PM 1:36

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| **GLORIA J. GREEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 1:13-CV-066-BL** |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Assigned to U.S. Magistrate Judge** |

### MEMORANDUM OPINION AND ORDER OF DISMISSAL

Pursuant to 42 U.S.C. § 405(g), Plaintiff Gloria Green (Green) seeks judicial review of the Commissioner of Social Security's decision, which denied her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. All parties consented to the jurisdiction of the U.S. Magistrate Judge and the United States District Judge ordered the case be reassigned to this court.

After considering all the pleadings, briefs, and administrative record, this court affirms the Commissioner's decision and dismisses, with prejudice, Green's complaint.

### Statement of the Case

Following a hearing on November 16, 2011, an Administrative Law Judge (ALJ) determined on December 23, 2011, that though she was not so before, Green became disabled beginning on September 16, 2011. Specifically, the ALJ held that Green: did not engage in any substantial gainful activity from her alleged onset date of August 1, 2007; had several severe impairments, although she had none meeting or equaling the Appendix 1 listed impairments (20

C.F.R. 404.1520(d), 404.1525, and 404.1526); had the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a) prior to September 16, 2011; had the RFC to perform less than a full range of sedentary work beginning on September 16, 2011; and also as of that date, considering Green's reduced RFC, age, education, and work experience, no jobs existed in the national economy that Green could have performed. (Tr. 15–24).

The Appeals Council denied review on February 25, 2013. (Tr. 1–5). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

### Factual Background

Prior to protectively filing her application for Disability Insurance Benefits on November 6, 2007, Green had worked as a data entry clerk, an accounts payable clerk, and most recently as a receptionist. (Tr. 232). She completed high school and two years of college. (Tr. 35). In 2000, she was diagnosed with diabetes, which led to neuropathy first diagnosed on the record in 2006 by Nurse Practitioner Marilyn Bond-Kinkade, RN, MSN, FNP-C. (Tr. 37, 264). The diabetes and neuropathy slowly got worse, such that Green estimated that by about 2009, she was unable to continue working. (Tr. 37, 51–52). She could neither sit nor stand for long, as her legs and feet would swell and fall asleep while she sat, and they would cause her pain while she stood. (Tr. 37–39, 45–46). Green's hands, too, caused her pain; she could only lift and carry small amounts of weight for short spells, and she ceased to be able to handwrite or manipulate objects, like a crochet hook, in hand as she once could. (Tr. 39, 47–49). Additionally, Green alleged problems with depression and memory, saying she would forget to pay bills or she would put an egg in the

frying pan and then leave the house. (Tr. 49).

In March of 2008, psychologist Don Marler, Ph.D., completed a mental RFC assessment, stating Green "can understand, remember, and carry out detailed, not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in a routine work setting." (Tr. 318). On the same date, Randal Reid, M.D., completed a physical RFC assessment, surmising Green was "somewhat limited by diabetic neuropathy but the impact of these [symptoms] does not wholly compromise [Green's] ability to function independently, appropriately, and effectively on a sustained basis." (Tr. 313).

On September 16, 2011, Martin Franklin, D.O., performed a consultative physical examination, diagnosing neuropathy in the upper and lower extremities, and noting that Green was off balance, could not tandem properly, had a slightly widened base, and had weak hand grip and lifting abilities. (See Tr. 398–99, 401–04). Though the ALJ did not explicitly state that Dr. Franklin's opinion was the deciding factor, the ALJ found that considering Green's age, education, work experience, and reduced RFC as opined by Dr. Franklin, Green became disabled as of the date of Dr. Franklin's exam. (Tr. 23–24). Prior to that date, the ALJ found, Green was not disabled. (Tr. 24).

## Standard of Review

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b)

(2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d

448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### Discussion

Green raises several issues on appeal. First, she claims the ALJ applied the wrong legal standard in finding number sixteen dealing with Green's age. Second, Green claims the ALJ applied the wrong legal standard when he included a sit/stand option in finding number seven dealing with Green's capability of performing past relevant work. Third, Green claims the ALJ failed to give controlling weight to a treating physician. Fourth, Green claims the ALJ relied on "stale" medical evidence. Finally, Green claims the ALJ did not properly analyze her subjective complaints of pain.

## I.     The ALJ Properly Applied a Categorical Age Label

Green claims that the ALJ's decision indicated that he thought a finding of "disabled" would be appropriate for Green at age fifty-five, and the ALJ mistakenly believed Green turned fifty-five in 2011 instead of 2001. (Pl.'s Br. 4–5).

In 20 C.F.R. § 404.1563, the Social Security Administration (SSA) details how a claimant's age is considered as a vocational factor. "In determining the extent to which age affects a person's ability to adjust to other work, we consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment . . . ." 20 C.F.R. § 404.1563(a). Subsections (c) through (e) of that section divide claimants into categories, including younger person (under 50 years old), person closely approaching advanced age (50–54), and person of

advanced age (55 or older). *Id.* §§ 404.1563(c)–(e). The SSA considers that at fifty-five or older, "age significantly affects a person's ability to adjust to other work." *Id.* § 404.1563(e).

Here, the ALJ was simply considering the additional factor of Green's advanced age, as defined in 20 C.F.R. § 404.1563(e), in addition to her RFC, age, and education, in determining that a finding of disabled would be appropriate. (Tr. 24). The ALJ was not indicating that Green should have been found disabled when she turned fifty-five. (Pl.'s Br. 4–5). The record as a whole makes clear the ALJ was not mistaken about Green's age. He explicitly asked Green for her birthdate and current age in years during the hearing, and he wrote in his opinion that Green was "60 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563)." (Tr. 22). Thus, it is plain that the ALJ was simply referring to section 404.1563 in classifying Green as a person of advanced age once she reached fifty-five years old, according to the regulation.

**II.    The ALJ Properly Included a Sit-Stand Option in His RFC Assessment**

Next, Green claims the ALJ applied the wrong legal standard when he included a sit-stand option in finding number seven dealing with Green's capability of performing past relevant work. Green alleges that the VE's testimony is at odds with the Dictionary of Occupational Titles (DOT), and the ALJ's failure to resolve this alleged conflict pursuant to Social Security Ruling (SSR) 00-4p was error. More specifically, Green claims, citing SSR 83-12, that "[t]he law holds that sit-stand options are not particularly suited for most work, only for executive positions." (Pl.'s Br. 5).

Ruling 83-12 reads, in pertinent part: "There are some jobs in the national economy— typically professional and managerial ones—in which a person can sit or stand with a degree of choice." SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). Ruling 83-12 lists professional and

managerial jobs as among the type that typically afford a sit-stand option. It does not, as Green alleges, state that only executive jobs have sit-stand options.

As to Green's claim that the DOT does not address sit-stand options, and therefore the VE's testimony is at odds with the DOT, SSR 00-4p itself provides a non-exclusive list of reasonable explanations for conflicts or apparent conflicts in occupational information, including "evidence from VEs or VSs can include information not listed in the DOT." SSR 00-4p, 2000 WL 1898704, *2 (Dec. 4, 2000). If, as Green concedes, the DOT is silent as to sit-stand options, the VE's testimony that a secretary position can include a sit-stand option is not necessarily in conflict with the DOT. *See* SSR 00-4p; *see also Haas v. Barnhart*, 91 F.App'x 942 (5th Cir. 2004) (finding that while the DOT included messenger jobs in excess of the sedentary level and assembler jobs at sedentary level, the VE's identification of each position at the sedentary level is not necessarily a conflict with the DOT).

Even assuming, *arguendo*, that a conflict does exist between the DOT and the VE's testimony, the ALJ is entitled to rely on the VE's testimony. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."); *see also Haas*, 91 F.App'x at 947–49 (a claimant cannot comb the record for a potential conflict between a VE and the DOT that was not raised during the administrative hearing). In sum, the ALJ properly included a sit-stand option in his RFC assessment.

### III.   The ALJ Properly Weighed Treating Physician Opinions

Next, Green argues the ALJ erred by not giving "substantial and controlling weight" to

Green's treating physicians (Pl.'s Br. 7).[1] The treating physician rule is referenced throughout Social Security administrative and case law; it essentially states that if a treating source's opinion on the nature and severity of a claimant's impairments is consistent with the record and based on sound diagnostic techniques, it will be afforded controlling weight. *See, e.g.*, 20 C.F.R. § 404.1527; *Newton*, 209 F.3d 448. However, a treating source's opinion is not automatically conclusive; an ALJ may give it less or even no weight where "the treating physician's opinion is conclusory, unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456; *see Myers v. Apfel*, 238 F.3d 617, 621 (holding that the final decision as to a claimant's status is the ALJ's, not the treating source's).

In his RFC analysis, the ALJ discussed the medical opinions of many treating and examining sources, including Imran Yazdani, M.D., Xiangling Zhang, M.D., George Lindsey, D.O., and Scott Brown, Psy.D., among others. (Tr. 19–21; *see, e.g.*, Tr. 268–71, 273–76, 388–91, 447–49, 489–92, 523–25, 535–39). As they were consistent with the medical record as a whole and based on sound diagnostic techniques, these treating and examining physicians' opinions were appropriately given great weight by the ALJ. (Tr. 16–21); *see Newton*, 209 F.3d at 453. The ALJ also discussed the opinion of Ms. Bond-Kinkade, noting that while her objective findings were consistent with the rest of the medical evidence, subjective opinions contained in her report were not. (Tr. 19–20). They were therefore not entitled to controlling weight. The ALJ explained his reasons for his treatment of Ms. Bond-Kinkade's notes, as he was required to. (Tr. 16–21); *see* 20 C.F.R. §§ 404.1527, 416.927; *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000) ("The ALJ

---

[1] Green focuses on one particular opinion, which she alleges was given by James Purpura, D.O. (Pl.'s Br. 8–11). That opinion in fact was given by Ms. Bond-Kinkade who the ALJ effectively considers a treating physician, thereby in no way prejudicing Green. (Tr. 19–20, 258–59); *see* 20 C.F.R. § 404.1513 (defining "acceptable medical source").

cannot reject a medical opinion without an explanation."). It is not so, as Green alleges, that the ALJ summarily rejected all of Ms. Bond-Kinkade's treatment notes. Indeed, the ALJ's hypotheticals to the VE incorporated many of Ms. Bond-Kinkade's restrictions, and some of the ALJ's hypotheticals assumed even more restrictions. (*See* Tr. 57–59). For example, the ALJ's hypothetical assumed a ten pound occasional and frequent lift and carry limit; Ms. Bond-Kinkade gave a fifteen pound limit for no more than two hours per day. (Tr. 57, 258). Both the ALJ's hypothetical and Ms. Bond-Kinkade's clinic notes reflected that Green could: stand and walk six hours in an eight hour day; sit six hours per day; and sit-stand at will. (Tr. 57, 258). The ALJ's hypothetical assumed no climbing scaffolds, ropes, or ladders; Ms. Bond-Kinkade limited ladder climbing to two hours. (Tr. 57, 258). Further, many of the objective findings the ALJ discussed from Dr. Lindsey's records matched the findings from Ms. Bond-Kinkade's records. For example: Green was alert and oriented; extremities showed no clubbing or edema; skin, back, neck, heart, lungs, and abdomen showed no abnormalities; and extremity strength and range of motion were normal. (Tr. 19–20).

It was the objective medical findings in the record that the ALJ gave significant weight; it was subjective opinions inconsistent with those findings that the ALJ noted were of little value. (Tr. 19–20); *see* 20 C.F.R. § 404.1527(c)(2); *Newton*, 209 F.3d at 453 *Myers*, 238 F.3d at 621. In all, the ALJ properly considered and weighed the opinions of the treating, examining, and non-examining sources on the record. Substantial evidence supports his determinations.

## IV.     The ALJ Did Not Impermissibly Rely Upon Stale Evidence

Next, Green argues that the ALJ relied on a medical opinion that had "become stale," specifically referring to a consultative examination performed in February of 2008 by Dr. Lindsey. (Pl.'s Br. 12; Tr. 268–72).

Green claims that by 2011 when the administrative hearing took place, her condition had deteriorated beyond what was reflected in the "stale" consultative exam. (Pl.'s Br. 12). First, the record contradicts Green's claim. In September of 2011, Green underwent a second consultative exam performed by Dr. Franklin. (Tr. 395–408). Dr. Franklin's findings bear substantial resemblance to Dr. Lindsey's, especially the findings considering Green's lower extremities. (*See* Tr. 270–71, 398–99). Most importantly, Dr. Franklin's 2011 findings do not support Green's allegations that her condition at all worsened. (Tr. 270–71).

Second, Green points to no authority to support her proposition that a consultative exam conducted on February 13, 2008, had become stale while in the same breath urging that the ALJ should have relied on an exam conducted on July 16, 2007. (Tr. 256–67, 268–72; Pl.'s Br.11–13).[2] *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). Nor does Green point to any medical opinion of record to support her claims. Green's fourth point of error has no merit. Substantial evidence in the record supports the ALJ's determination so it must stand. *See Richardson*, 402 U.S. at 390; *Newton*, 209 F.3d at 452.

## V.    The ALJ Properly Analyzed Green's Subjective Complaints of Pain

Finally, Green argues that the ALJ did not properly analyze her complaints of neuropathic pain. (Pl.'s Br. 13–15). Again citing no authority, Green claims that while the ALJ spelled out the typical two-step process, first attempting to find a medically determinable impairment shown by medically acceptable clinical and laboratory diagnostic techniques, and second evaluating the intensity, persistence, and limiting effects of those symptoms on Green's work, the ALJ nonetheless failed to analyze Green's pain. (Pl.'s Br. 14). Indeed, in the midst of

---

[2] The government notes this chronological pickle into which Green seems to put herself, advocating the adoption of an opinion from July of 2007, before the alleged onset date (August, 1, 2007), while labeling an opinion from 2008 "stale." (Def.'s Br. 14, n.4).

the ALJ's multi-page analysis of Green's pain, the ALJ set forth the standard under which pain is evaluated. (Tr. 16–19); *see* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 375186 (July 2, 1996). The ALJ wrote:

> In order for pain itself to be disabling, it must be constant, unremitting and wholly unresponsive to therapeutic treatment. *See Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988). Subjective complaints of pain must be reasonably consistent with the objective record in order to be found credible. *Adams v. Bowen*, 833 F.2d 509 (5th Cir. 1987). I am authorized to make credibility decisions with regard to the subjective complaints of pain. *See Griego v. Sullivan*, 940 F.2d 942 (5th Cir. 1991), and I have considered the effect of pain and side effects (if any) to her medical regime in deciding her functional capacity. (Tr. 17).

First, the ALJ looked for an impairment that can be shown by medically acceptable techniques that would reasonably be expected to produce Green's pain. (Tr. 17). The ALJ discussed the results of several physical and mental assessments performed by examining and treating sources, including Ms. Bond-Kinkade, Dr. Lindsey, and Dr. Zhang with the VA, ultimately finding that

> . . . the record establishes no treating source has documented the presence of a medically determinable impairment that meets the level of severity of a Section contained within the Listing of Impairments. Whether an individual's impairment manifests the requirements is simply a matter of documentation. That documentation is absent. No treating physician has documented a medically determinable impairment that would prevent the claimant from engaging in substantial gainful work activity prior to September 16, 2011. (Tr. 21 (citation omitted); 16–20).

The ALJ then undertook a credibility analysis of Green's complaints, recounting testimony from two administrative hearings and finding Green "generally credible, but not to the extent alleged." (Tr. 17–19) (noting the discrepancies in some of Green's claims, and the abilities Green showed in various medical examinations). The ALJ considered Green's daily activities, the duration and frequency of Green's pain, and the measures Green used to relieve the pain. (Tr. 17–21, 30–62); *see Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). The ALJ's pain analysis is

thorough and personally applied to Green, not "boilerplate," as Green suggests. (Pl.'s Br. 14). At minimum, substantial evidence supports the ALJ's determination as to Green's subjective complaints of pain, which is the ultimate inquiry for the court. *See Perales*, 402 U.S. 389. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994). In this case, substantial evidence supports each of the ALJ's determinations.

<u>**Conclusion**</u>

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED** and Green's complaint is **DISMISSED** with prejudice. Any appeal shall be to the Court of Appeals for the Fifth Circuit in accordance with 28 U.S.C. § 636(c)(3).

**SO ORDERED.**

Dated this 18th day of September, 2014.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**